**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

HASSEN BERRY

        Petitioner,                                    Case No. 10-10969

v.                                                          ARTHUR J. TARNOW
                                                            UNITED STATES DISTRICT JUDGE

REBECCA ADDUCCI, District Director,
Bureau of Immigration and Customs                DONALD A. SCHEER
Enforcement, *et al.*,                                       MAGISTRATE JUDGE

        Respondents.

_____/

**ORDER
SUBSTITUTING REBECCA ADDUCCI AS THE DISTRICT DIRECTOR
for the BUREAU OF IMMIGRATION AND CUSTOMS ENFORCEMENT,
DENYING PETITION FOR WRIT OF HABEAS CORPUS [1], and
GRANTING RESPONDENTS' MOTION TO LIFT STAY OF REMOVAL [8]**

**I. INTRODUCTION**

On March 10, 2010, Hassen Berry ("Petitioner"), proclaiming himself to be a "stateless individual," filed a Petition for Writ of Habeas Corpus [1]. Therein, Petitioner seeks immediate release from custody, equitable remedies preventing Petitioner's deportation and conferring the right to adjust his citizenship status, and an award of costs and attorneys' fees.

On March 26, 2010, the Bureau of Immigration and Customs Enforcement, *et al.* ("Respondents") filed a Response [8] and supporting exhibits, arguing that Petitioner is not entitled to the relief he seeks. In the same filing [8], Respondents moved the Court to lift the stay of removal effected by prior Order [5] in this case.

Petitioner has filed no reply, and has not come forth with evidence to refute the documentation provided by Respondents.

For the reasons set forth below, the Petition for Writ of Habeas Corpus [1] will be **DENIED**, and Respondents' Motion to Lift Stay of Removal [8] will be **GRANTED**.

## II. BACKGROUND

Petitioner was born in Lebanon in 1964, and entered the United States at the age of eight as a lawful permanent resident. *See* Pet. at 4.

On September 6, 2007, Petitioner was placed into removal proceedings for having incurred criminal convictions as contemplated by the Immigration and Nationality Act ("INA"). Resp. at Ex. A. On October 24, 2007, a judge of Detroit's Immigration Court held a bond redetermination hearing, at which it was decided that Petitioner was "clearly subject to mandatory detention as he was convicted of an aggravated felony as defined under INA section 101(a)(43)(G); a theft or burglary offense for which the term of imprisonment is at least one year." *Id*. at Ex. G. The judge noted that, thus, the Immigration Court did not have jurisdiction over Petitioner's custody status. *Id*. Petitioner appealed that decision to the Board of Immigration Appeals, which affirmed the determination of the Immigration Judge. *Id*. at Ex. H. It appears that no appeal was taken to the Sixth Circuit Court of Appeals. On March 19, 2008, the Immigration Judge ordered Petitioner's removal to Lebanon. *Id*. at Ex. F. Petitioner was detained by Immigration and Customs Enforcement ("ICE") while the agency made arrangements for his removal. *Id*. at Ex. I.

However, on August 7, 2008, due to a delay in obtaining necessary travel documents from the Lebanese government, Petitioner was released from custody under an Order of Supervision. *See id*. at Exs. I and J. At that time, Petitioner acknowledged and agreed to certain enumerated conditions of release. *Id*. at Ex. J.

On March 22, 2010, the Lebanese Consulate informed ICE that it had approved the application for Petitioner's travel documents. *Id*. at Ex. K. The Consulate further informed ICE that it would issue the travel documents permitting Petitioner's removal as soon as ICE provided a travel itinerary, photographs of Petitioner, a fingerprint card, and $40. *Id*. Petitioner was scheduled to report for fingerprinting on April 5, 2010. *Id*. Respondents represent to the Court that Petitioner's removal is imminent. *Id*. at 4.

### III. DISCUSSION

This Court's jurisdiction is invoked pursuant to the federal habeas corpus statute, which authorizes any person to claim in federal court that he or she is being held "in custody in violation of the Constitution or laws . . . of the United States." *See* 28 U.S.C. § 2241(c)(3). Specifically, Petitioner alleges that his detention by ICE has violated due process rights guaranteed by the Fifth Amendment to the United States Constitution.

The Petition states two grounds for relief. First, Petitioner argues that, as an unremovable and stateless person, his "indefinite custody" is a violation of his constitutional rights. Pet. at 3. Second, Petitioner argues that his subjection to a perpetual Order of Supervision is an unconstitutional denial of due process. *Id*. at 4.

#### A. PETITIONER IS "IN CUSTODY" FOR PURPOSES OF INVOKING HABEAS JURISDICTION

The record clearly reflects that Petitioner, who was released on August 8, 2008, under an Order of Supervision, is not currently in the physical custody of ICE. However, the Habeas Petition suggests otherwise, claiming that "[t]o date, ICE is refusing to release [Petitioner], and is keeping him indefinitely in custody." *Id*. Elsewhere, the Petition makes general reference to Petitioner's "current custody by ICE," and claims that for ICE "[t]o hold him any longer in the absence of evidence that he poses a danger or flight risk . . . violates due process." *Id*. at 6. To the extent that Petitioner's arguments rest on a contention that he currently remains in ICE's physical custody, those arguments are rejected as factually unsubstantiated.

Setting aside the issue of Petitioner's prior period of detention,[1] Respondents suggest that because Petitioner is no longer in the physical custody of ICE, his habeas petition should be dismissed at the threshold. *See* Resp. at 4-5 (citing *Mahmoud v. Cangemi*, 2006 WL 1174214 at *3

---

[1] Petitioner elsewhere suggests that this Petition is based on his prior physical "detention for eleven months" – that is, for the time period between his September, 2007, placement into removal proceedings and his August, 2008, release from physical custody – which he alleges to have violated constitutional guarantees of substantive due process. *See* Pet. at 6.

(D.Minn. May 1, 2006) (holding a petitioner had failed to show that the conditions of an order of supervision constituted a "constructive detention"); *Camara v. Comfort*, 235 F. Supp. 2d 1174, 1176 (D.Colo. 2002) (finding that constraints imposed by an order of supervision were "collateral consequences" not of a petitioner's illegal detention, but of his original order of removal, and were thus non-justiciable, or alternatively did not rise to the level of a constitutional injury)).

However, for purposes of establishing habeas jurisdiction, courts have not always interpreted the phrase "in custody" so narrowly as Respondents urge. Under a variety of circumstances, it has been held that a petitioner need not be subject to physical confinement to invoke the habeas jurisdiction of the federal courts. *See, e.g., Jones v. Cunningham*, 371 U.S. 236, 243 (1963) (holding that a paroled petitioner was subject to "conditions which significantly confine[d] and restrain[ed] his freedom," such that he was "in the 'custody' of the [State] Parole Board within the meaning of the habeas corpus statute" and was thus entitled to invoke federal habeas jurisdiction); *DePompei v. Ohio Adult Parole Authority*, 999 F.2d 138, 140 (6th Cir. 1993) (holding that an individual who was on parole when he filed his petition was "in custody" for purposes of habeas jurisdiction); *Sevier v. Turner*, 742 F.2d 262, 269 (6th Cir. 1984) (noting that "the term 'custody' is not limited solely to physical confinement," and that "persons on parole, probation or bail may be in custody for purposes of §§ 2241 and 2254").

The Sixth Circuit Court of Appeals has explicitly extended these principles to petitions for habeas relief in the context of immigration. *See Rosales-Garcia v. Holland*, 322 F.3d 386, 395 (6th Cir. 2003) (likening a petitioner's release from INS detention to the *Jones* petitioner's release on parole, and finding that an immigration parole "impose[d] similarly restrictive conditions"). Similarly, this Court has held that a petitioner who was "subject to a final order of deportation [was] considered to be 'in custody' for purposes of entitlement to habeas relief" because, even though the petitioner was not in physical detention by an immigration agency, he was subject to "'that restriction of movement resulting from any final order of deportation.'" *Lemeshko v. Wrona*, 315

F. Supp. 2d 778, 782-83 (E.D. Mich. 2004) (quoting *Mendoca v. INS*, 52 F. Supp. 2d 155 (D.Mass. 1999)).

For the reasons set forth in the case law summarized above, the Court finds that Petitioner, who is subject to both a final Order of Removal and an interim Order of Supervision, is "in custody" for purposes of invoking federal habeas jurisdiction. *Cf. Lemeshko* at 783; *Rosales-Garcia v.* at 395; *see* Resp. at Exs. F and J.

However, to be granted relief, Petitioner "must now establish that he is 'in custody in violation of the Constitution or laws or treaties of the United States.'" *Lemeshko* at 783 (quoting 28 U.S.C. § 2241(c)(3)).

### B. PETITIONER IS NOT IN "INDEFINITE CUSTODY" PENDING HIS REMOVAL

First, Petitioner argues that, because he is an unremovable and "stateless" person, his "indefinite custody" is a violation of his constitutional rights. Pet. at 3.

As authority for that proposition, Petitioner relies on *Zadvydas v. Davis*, in which the Supreme Court of the United States considered "whether aliens that the Government finds itself unable to remove are to be condemned to an indefinite term of imprisonment within the United States." *See* 533 U.S. 678, 695 (2001). In *Zadvydas*, the Supreme Court conducted an extensive analysis of the federal statutes that provide for the detention of criminal aliens, establish the period of time within which detained aliens must be removed, and authorize the imposition of conditions of supervision over those aliens who are released because they cannot be removed within the prescribed period. *Id*. at 698 (citing 8 U.S.C. §§ 1226(c), 1231(a)). "[F]or the sake of uniform administration in the federal courts," the Supreme Court recognized that the statutorily-prescribed 90-day period of pre-removal detention may be extended to a six-month period before raising concerns of a constitutional dimension. *See id*. at 701; *see also* 8 U.S.C. § 1231(a)(1)(A). The Court elaborated:

> After this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing . . . This 6-month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.

*Zadvydas*, 533 U.S. at 701.

Here, Petitioner's reliance on *Zadvydas* is misplaced. As noted above, Petitioner is not currently being "held in confinement," much less is he being held in indefinite detention. In that basic sense, *Zadvydas* is inapposite. The Court explicitly declines to distort *Zadvydas*, which addressed the issue of a potentially "indefinite term of imprisonment," to encompass the facts of this case, in which there currently exists no physical imprisonment at all.[2] *See id*. at 695.

### C. THIS COURT IS NOT EMPOWERED TO GRANT THE REQUESTED RELIEF

Next, Petitioner suggests that his subjection to an ongoing Order of Supervision is an unconstitutional denial of due process. *Id*. at 4. Again, Petitioner's argument is premised on the presumptions that he is "stateless," that the Order of Supervision is "indefinite," that his "removal is impossible," and that he is subject to "continual custody" that contravenes the Supreme Court's holding in *Zadvydas*. *See* Pet. at 6-9. Because these presumptions are factually inaccurate, and because the Court is not empowered to grant the relief requested, Petitioner's petition must fail.

Petitioner urges the Court to relieve him from "the burdens of the perpetual order of supervision," to stop his deportation proceedings, and to "have his status normalized to that of a Permanent Resident." However, Petitioner provides no legal argument to establish the Court's

---

[2] The Court does note, however, that Respondents have submitted adequate record evidence to demonstrate that not only is Petitioner *not* a "stateless" person, but that it appears the Lebanese government has in fact approved Petitioner's travel back to that country, and that there is a "significant likelihood of removal in the reasonably foreseeable future." *See Zadvydas* at 701; Resp. at Ex. K.

authority to grant any of the requested relief.

To the contrary, the *Zadvydas* opinion specified that it "nowhere den[ied] the right of Congress to remove aliens [or] to subject them to supervision with conditions," and advised federal courts exercising habeas jurisdiction that an "alien's release [from pre-removal detention] may and should be conditioned on any of the various forms of supervised release that are appropriate in the circumstances." *Zadvydas*, 533 U.S. at 695, 700. Here, Petitioner has provided the Court with no specific law or argument to support his challenge of the conditions of his Order of Supervision.

Furthermore, Petitioner's Order of Removal, itself, is not subject to the direct review of this Court. *See* 8 U.S.C. § 1252(a)(2)(A)(I) ("[N]o court shall have jurisdiction to review . . . any individual determination or to entertain any other cause or claim arising from or relating to the implementation or operation of an order of removal").

Finally, this Court is without power to consider Petitioner's request to grant an adjustment of his status. Not only is this habeas petition an improper means by which to make such a request, but Petitioner is statutorily ineligible for admission to the United States because of his convictions for crimes involving moral turpitude, and is statutorily ineligible for a waiver due to his additional conviction of an aggravated felony. *See* 8 U.S.C. § 1182 (a)(2)(A)(I) ("[A]ny alien convicted of, or who admits having committed . . . a crime involving moral turpitude . . . is inadmissible."); 8 U.S.C. § 1182(h) ("No waiver shall be granted . . . in the case of an alien who has previously been admitted to the United States as an alien lawfully admitted for permanent residence [if] since the date of such admission the alien has been convicted of an aggravated felony."); Resp. at Ex. G, H. Because Petitioner's inadmissibility cannot be waived, he is ineligible for an adjustment of status in the Attorney General's discretion. *See* 8 U.S.C. § 1255(a).

Thus, the Court finds that Petitioner has not shown that he is "in custody in violation of the Constitution or laws or treaties of the United States" so as to sustain a grant of habeas relief. *See* 28 U.S.C. § 2241(c)(3).

## IV. CONCLUSION

For the foregoing reasons, the Court having reviewed the record in this case and being fully advised in the premises,

**IT IS HEREBY ORDERED** that the Petition for Writ of Habeas Corpus [1] is **DENIED**.

**IT IS FURTHER ORDERED** that Respondents' Motion to Lift Stay of Removal [8] is **GRANTED**.

The case is hereby **DISMISSED WITH PREJUDICE**.

**SO ORDERED.**

S/ARTHUR J. TARNOW
Arthur J. Tarnow
United States District Judge

Dated: May 25, 2010

I hereby certify that a copy of the foregoing document was served upon counsel of record on May 25, 2010, by electronic and/or ordinary mail.

S/LISA M. WARE
Case Manager